UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Search Warrant Affidavit Pertaining to a Search and Seizure Warrant dated July 15, 2026,

ANTHONY M. MIRANDA and SYLVIA MIRANDA,

*Petitioners*,

- v. -

UNITED STATES OF AMERICA,

*Respondent.*

Case No.

(Arising from Case No. 26-683(M) in the United States District Court for the District of Puerto Rico)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**

COZEN O'CONNOR

Jerry H. Goldfeder
Sarah Krissoff

3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007

*Counsel for Anthony M. Miranda*

ABELL ESKEW LANDAU LLP

Jarrod L. Schaeffer

256 Fifth Avenue, 5th Floor
New York, NY 10001

*Counsel for Sylvia Miranda*

**Table of Contents**

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

RELEVANT LAW ........ 4

ARGUMENT ........ 6

I. The Government's Demand Interferes with Petitioners' Constitutional Rights ........ 6

II. The Government's Demand Elevates Temporary Tactical Advantage Over Fundamental Fairness ........ 8

III. The Government's Reliance on the Prior Sealing of the Affidavit Is Unavailing ........ 10

IV. The Petitioners Are Entitled to Relief ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Standard, Inc. v. Oakfabco*,
498 F. Supp. 2d 711 (S.D.N.Y. 2007)....................................................................12

*Archie Comic Publications, Inc. v. DeCarlo*,
2001 WL 1543256 (S.D.N.Y. Dec. 3. 2001) ..........................................................13

*California v. Trombetta*,
467 U.S. 479 (1984)..............................................................................................5, 8

*Chew v. Dietrich*,
143 F.3d 24 (2d Cir. 1998).........................................................................................5

*Coppedge v. United States*,
369 U.S. 438 (1962)...............................................................................................14

*Dennis v. United States*,
384 U.S. 855 (1966).................................................................................................9

*Douglas v. People of State of California*,
372 U.S. 353 (1963)...............................................................................................14

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
241 F. 3d 154 (2d Cir. 2001)..................................................................................13

*Herring v. New York*,
422 U.S. 853 (1975).................................................................................................5

*In re Search Warrant dated Nov. 5, 2021*,
2024 WL 1636239 (S.D.N.Y. Apr. 16, 2024)..........................................................11

*In re Sealed Search Warrants Issued June 2 and 5, 2008*,
2008 WL 5667021 (N.D.N.Y. July 14, 2008) .........................................................12

*Int'l Bus. Machines Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975).........................................................................................5

*Maine v. Moulton*,
474 U.S. 159 (1985)...........................................................................................5, 7, 8

*McNabb v. United States*,
318 U.S. 332 (1943)............................................................................................6, 13

*United States v. Cohen*,
366 F. Supp. 3d 612 (S.D.N.Y 2019)....................8, 9

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017)....................6, 13

*United States v. Payner*,
447 U.S. 727 (1980)....................6

*United States v. Sattar*,
471 F. Supp. 3d 380 (S.D.N.Y. 2006)....................11

*United States v. Sanchez*,
813 F. Supp. 241 (S.D.N.Y. 1993)....................12

*United States v. Stein*,
541 F.3d 130 (2d Cir. 2008)....................4, 5, 7, 8

*United States v. Vetere*,
663 F. Supp. 381 (S.D.N.Y. 1987)....................6

**Statutes**

28 U.S.C. § 2201(a)....................2, 12

28 U.S.C. § 1651....................2

## PRELIMINARY STATEMENT

This application arises from unusual circumstances, but the relief sought is straightforward and narrow. Petitioners seek a declaration that their counsel can review and advise them regarding a document the petitioners have already reviewed. The document is already in counsel's possession, because government agents gave it to their clients and told them to review it. Purely to preserve a tactical advantage, however, the government now insists that counsel cannot see what their clients have seen—blinding counsel to crucial matters and circumscribing their ability to meaningfully advise their clients in an overt and ongoing criminal investigation.

On July 16, 2026, agents with the Federal Bureau of Investigation ("FBI") and investigators with the New York City Department of Investigation ("DOI") conducted a search of a residence owned by Anthony M. Miranda and Sylvia Miranda (together, the "Petitioners") pursuant to a search warrant dated July 15, 2026, which was issued by a Magistrate Judge in the United States District Court for the District of Puerto Rico. That warrant was obtained in connection with a criminal investigation supervised by the United States Attorney's Office for the Southern District of New York, and an open grand jury investigation pending in this district. During the search, the FBI agents and DOI investigators provided Petitioners with copies of both the search warrant and the underlying affidavit submitted to obtain the warrant (the "Affidavit"). Petitioners were instructed to review those documents, including the Affidavit, and told that they were permitted to retain the documents. Petitioners did as they were instructed.

The prosecutors in the case subsequently reversed course, demanding that Petitioners return the Affidavit. While the document provided by the agents was returned, copies of the Affidavit were retained and counsel currently possess—but have not reviewed—those copies. The government has taken the categorical position that neither Petitioners (who have already read the

Affidavit) nor their counsel may legally retain or review the Affidavit because it was sealed prior to the search of Petitioners' residence. As discussed herein, that position is untenable and unsupported by law. And prohibiting counsel from possessing or reviewing the Affidavit significantly infringes on their ability to properly advise their clients regarding both the search and the government's ongoing investigation.

Petitioners do not seek to unseal the Affidavit, to share it with third parties, or to publicize its contents. They are not requesting that the Court compel the government to make additional disclosures. Out of an abundance of caution, Petitioners merely seek a declaration that their attorneys can review and advise them about information Petitioners have already seen, and which government agents provided and told them to read. Nothing justifies the government's attempt to intercede between Petitioners and their lawyers, and allowing it to do so would be unjust and highly prejudicial.

Accordingly, pursuant to the Court's authority under the Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; and/or its inherent supervisory authority over criminal matters, Petitioners respectfully request an order declaring that it is legally permissible for Petitioners and their counsel to review the Affidavit and retain the copies currently in counsel's possession, subject to any terms or conditions that the Court deems necessary to safeguard the integrity and confidentiality of the criminal investigation with respect to third parties.

**FACTUAL BACKGROUND**

On or about July 16, 2026, FBI agents and DOI investigators working with and under the supervision of the United States Attorney's Office for the Southern District of New York executed a warrant to search a residence owned by Petitioners in Puerto Rico (the "Premises"). (Decl. of Sarah Krissoff, Esq., dated Aug. 19, 2026 ("Krissoff Decl.") ¶ 2.) The warrant to search the

Premises was obtained in reliance upon the Affidavit. (*Id.*) During the search of the Premises, the agents and investigators provided Petitioners with a copy of the search warrant and a copy of the Affidavit. (*Id.* ¶ 3.) The agents and investigators expressly directed Petitioners to review both documents, observed Petitioners reviewing the materials, and further informed Petitioners that they could retain those copies. (*Id.*)

Subsequent to the search, then-counsel for Petitioners in Puerto Rico contacted the prosecutors overseeing the FBI agents and DOI investigators who conducted the search. (*Id.* ¶ 4.) Upon learning that Petitioners had been provided with a copy of the Affidavit, the government demanded that it be returned. (*Id.*) Then-counsel complied with the government's demand and caused the copy to be returned to the FBI field office in Puerto Rico.[1] (*Id.*) By the time the Affidavit was returned, however, Petitioners had already reviewed the Affidavit (as directed and observed by the agents) and copies of the Affidavit had been made. (*Id.* ¶¶ 4–5.)

Petitioners' current counsel promptly informed the government that copies of the Affidavit had, in fact, been made and retained prior to the Affidavit being returned. (Krissoff Decl. ¶¶ 4–5.) Counsel is in possession of copies of the Affidavit but, out of an abundance of caution, elected not to review them prior to broaching the matter with the government. (*Id.* ¶ 5.) Although there could be no legitimate concern about confidentiality as to Petitioners—since they had already reviewed the Affidavit at the direction of the FBI and DOI—counsel recognized that the government might have concerns about broader disclosure. (*Id.* ¶ 6.) To accommodate any such concerns, counsel proposed that they retain the copies of the Affidavit on an "Attorney Possession Only" basis and permit Petitioners to review them only in the presence of counsel. (*Id.*)

[1] The government has never identified any legal basis requiring the return of the Affidavit other than the fact that it was sealed prior to the search. Prior counsel does not primarily practice federal criminal law and apparently did not press the government to justify its demand.

The government rejected that proposal. Instead, it took the position that both Petitioners and their counsel were categorically prohibited from retaining or reviewing any copies of the Affidavit because it had been sealed prior to the search. (*Id.* ¶¶ 6–7.) Counsel further suggested that if the prior sealing was the government's concern, now that the search had been conducted the parties could seek a limited unsealing order permitting review by Petitioners and their counsel on the terms described above. (*Id.* ¶ 7.) The government rejected that proposal, too. (*Id.*)

Despite the fact that Petitioners were given the Affidavit, told to review it, and in fact read it as instructed, the government continues to insist that their counsel cannot review the Affidavit and demands that any copies be returned or destroyed. (*Id.* ¶ 8.) At the same time, the government continues its investigation, including by serving Petitioners with grand jury subpoenas demanding documents and other information.

**RELEVANT LAW**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defence." U.S. CONST. amend. VI. While "the Sixth Amendment right to counsel typically attaches at the initiation of adversarial proceedings," the concept of "[a]ttachment" refers to "*when* the Sixth Amendment right may be asserted" but "does not concern the separate question of *what* the right guarantees . . . ." *United States v. Stein*, 541 F.3d 130, 152 (2d Cir. 2008) (emphasis in original).[2] Thus, "[w]hen the government acts prior to indictment so as to impair [an individual]'s relationship with counsel post-indictment, the pre-indictment actions ripen into cognizable Sixth Amendment deprivations upon indictment." *Id.* at 153.

[2] Unless otherwise indicated, case text quotations omit all internal alterations, quotation marks, and citations.

"The government must 'honor' a defendant's Sixth Amendment right to counsel." *Id.* at 154 (quoting *Maine v. Moulton,* 474 U.S. 159, 170–71 (1985)). That "means more than simply that the [government] cannot prevent the accused from obtaining the assistance of counsel." *Moulton*, 474 U.S. at 170–71. Rather, it "imposes on the [government] an affirmative obligation to respect and preserve the accused's choice to seek this assistance." *Id.* at 171; *cf. Herring v. New York*, 422 U.S. 853, 857 (1975) ("[T]he right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments."). "[A]t the very least, the prosecutor . . . ha[s] an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Stein*, 541 F.3d at 154 (quoting *Moulton*, 474 U.S. at 170–71).

Additionally, "pre-indictment conduct [by the government] is separately constrained by the Fifth Amendment." *Stein*, 541 F.3d at 153 n.12; *see also Int'l Bus. Machines Corp. v. Edelstein*, 526 F.2d 37, 44 (2d Cir. 1975) (agreeing "wholeheartedly" that "our constitutional notions of fair play and due process dictate that defense counsel be free from obstruction, whether it come from the prosecutor in the case" or other government actors). The Fifth Amendment provides that "[n]o person shall be held to answer for a . . . crime, . . . without due process of law." U.S. CONST. amend. V. And "[u]nder the Due Process Clause . . . , criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984).[3]

[3] While *Trombetta* technically involved the due process clause of the Fourteenth Amendment, "the due process analysis is basically the same under both the Fifth and Fourteenth Amendments." *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)

Finally, "[j]udicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States*, 318 U.S. 332, 340 (1943). "Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force." *Id.* Courts therefore possess inherent supervisory power over criminal matters, which "permits federal courts to supervise the administration of criminal justice among the parties before the bar." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 135 (2d Cir. 2017) (quoting *United States v. Payner*, 447 U.S. 727, 735 n.7 (1980)). "The exercise of the court's supervisory power can extend beyond the minimum requirements set by the Constitution to encourage fair and uniform procedures in the prosecution of criminal actions." *United States v. Vetere*, 663 F. Supp. 381, 386 (S.D.N.Y. 1987).

## ARGUMENT

### I. The Government's Demand Interferes with Petitioners' Constitutional Rights

The government's insistence that Petitioners' lawyers neither review nor retain a copy of the Affidavit directly interferes with counsel's ability to effectively advise and assist their clients in connection with an ongoing federal criminal investigation. That investigation, now overt,[4] is clearly focused at least in part on Petitioners and it remains active. Nor does it seem the

[4] *See, e.g.,* William K. Rashbaum et al., *U.S. Inquiry Into Former N.Y.C. Sheriff Seeks Records on Tobacco Firm*, N.Y. TIMES (July 16, 2026), https://www.nytimes.com/2026/07/16/nyregion/reynolds-tobacco-criminal-investigation-nyc-sheriff.html.

government has completed its direct investigatory steps as to Petitioners, since both were served with multiple grand jury subpoenas on the same day that their residence was searched.

Reviewing the Affidavit is necessary for a multitude of reasons, including, but not limited to, conducting an investigation to determine and advise Petitioners regarding their potential criminal exposure, if any; determining whether to raise objections or assert privileges with respect to material demanded by the government's outstanding grand jury subpoenas; making determinations about whether or how to engage with the government in order to best safeguard Petitioners' legal rights and interests; and assessing whether items seized by the government are outside the scope of the probable cause underlying the warrant. As the Court is well aware, all of those assessments and decisions may be significant inflection points that greatly shape the options, positions, and arguments later available to Petitioners should the government ever bring formal charges against them. Preventing counsel from reviewing a document at the heart of those questions, which Petitioners have already seen and which counsel possess, impermissibly "circumvents and thereby dilutes the protection afforded by the right to counsel." *Stein*, 541 F.3d at 154 (quoting *Moulton*, 474 U.S. at 170–71).

Moreover, since the FBI and DOI provided the Affidavit to Petitioners and directed them to review it, counsel also need to explain and interpret that information for Petitioners to effectively advise them regarding recent events and the government's investigation. Counsel's ability to do so, however, is severely hampered by receiving such information second-hand from Petitioners, if at all. While the Court, prosecutors, and defense counsel are all familiar with the mechanics, components, phrasing, and import of an affidavit's provisions, Petitioners are not. Unsurprisingly, counsel are likely to glean additional or different information from the Affidavit than Petitioners alone. Not only would such information shape any explanations and advice that counsel would

provide their clients, it would also permit counsel to correct any misimpressions or errant conclusions that Petitioners may have drawn from their own review. But none of that is possible unless counsel can review the Affidavit for themselves, and forcing Petitioners to go it alone is inconsistent with the government's "affirmative obligation to respect and preserve the accused's choice to seek this assistance" from counsel. *Moulton*, 474 U.S. at 171. Nor does keeping Petitioners' counsel in the dark "comport with prevailing notions of fundamental fairness." *Trombetta*, 467 U.S. at 485.

In order to effectively advise Petitioners, their counsel must be permitted to review the same document that Petitioners have already reviewed. The government's effort to keep from counsel this important information about the investigation, which would directly and substantially influence crucial decisions, significantly "impair[s]" the relationship between counsel and their clients in a manner that will ripen into cognizable Sixth Amendment deprivations. *Stein*, 541 F.3d at 153. This Court can and should act to prevent that inevitable prejudice to Petitioners.

## II. The Government's Demand Elevates Temporary Tactical Advantage Over Fundamental Fairness

Petitioners' counsel should be able to review the Affidavit for another reason: the only consequences of that review will be to allow counsel to advise Petitioners about a document they have already reviewed—putting counsel and client on an even playing field, facilitating effective representation. Given the circumstances of this case, there are no other cognizable risks to the government's investigation sufficient to justify depriving Petitioners' counsel of information their clients were affirmatively provided.

"[T]he information contained in search warrant applications and affidavits necessarily plays a direct role in a court's determination of whether probable cause exists to support issuance of the warrant." *United States v. Cohen*, 366 F. Supp. 3d 612, 621–22 (S.D.N.Y. 2019). To be

sure, in practice most warrant affidavits remain sealed during the investigative phase of a case until they are ultimately produced in discovery following the commencement of a prosecution.[5] Petitioners do not seek to upend that typical practice. They are not requesting, for instance, that the Court compel the government to provide the Affidavit or make additional disclosures. Petitioners seek only to ensure that their attorneys can review, explain, and interpret the information they themselves were provided.

Generally, "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States*, 384 U.S. 855, 870 (1966). And none of the government's traditional rejoinders have merit here. In cases seeking the disclosure of warrant affidavits, for example, the government has relied variously on "risks to national security, protecting the privacy and reputation of crime victims, . . . minimizing the danger of an unfair trial from adverse publicity, . . . the risk of impairing law enforcement investigations and the interests in preventing disclosure of law enforcement techniques and procedures, preserving the confidentiality of sources, protecting witnesses and law enforcement personnel, safeguarding the privacy of individuals involved in an investigation, and otherwise preventing interference with or disclosure of the details of an ongoing investigation." *Cohen*, 366 F. Supp. 3d at 622–23 (internal citation omitted). Here, however, the Affidavit was provided directly to Petitioners—the subjects of the government's investigatory actions—and the government cannot

---

[5] In this regard, a search warrant affidavit is entirely unlike a document that is inadvertently produced in litigation—say, because counsel failed to realize that it is privileged—and later clawed back. In that circumstance, the produced document never would have been provided absent error. Here, however, should the government bring charges against Petitioners, it will then be *required* to produce the Affidavit. *See* Fed. R. Crim. P. 16.

possibly argue that permitting Petitioners' counsel to review the Affidavit would pose greater risks than review by Petitioners themselves.

At bottom, the government's position boils down to its desire to preserve a temporary tactical advantage over Petitioners' counsel by prohibiting them from advising their clients during the course of the government's investigation, even while counsel must make consequential decisions about responding to subpoenas and engaging with the government. That strategic motivation is unreasonable under these circumstances and should be rejected.

**III. The Government's Reliance on the Prior Sealing of the Affidavit Is Unavailing**

The sole legal basis articulated by the government to prohibit counsel from reviewing the Affidavit is that the document was sealed prior to the execution of the search of Petitioners' residence.[6] But that is insufficient to justify the government's infringement on Petitioners' right to meaningful assistance from their counsel. Indeed, even if a prior sealing order were a sufficient basis to preclude counsel from reviewing a document provided to Petitioners (and as discussed above, it is not), the bases on which the government might rely to justify such sealing at this stage—at least vis-à-vis Petitioners and their counsel—have been vitiated by the government's own conduct.

First, *sealing* a document is not the same as prohibiting attorneys with legitimate a connection to the matter from possessing or reviewing it. Indeed, defense attorneys in this district routinely possess, review, and use sealed documents in the course of representing their clients—

---

[6] It is worth noting at the outset that it is unclear whether the Affidavit even remains sealed as to the Petitioners at this point. The typical SDNY language requesting the sealing of search warrant materials generally permits the government to share those materials without further order from the court to facilitate the execution of the warrant and to meet its discovery and disclosure obligations. FBI and DOI seemingly exercised that discretion here by providing the Affidavit to Petitioners.

from pre-sentence reports to U.S.S.G. § 5K1.1 letters to sensitive medical applications. Sealing a document simply means withholding it from the general public notwithstanding the presumption of access to documents related to judicial proceedings. *See, e.g.*, *United States v. Sattar*, 471 F. Supp. 3d 380, 384 (S.D.N.Y. 2006) ("The public has a qualified right of access to judicial proceedings and documents[.]").

The government's focus on sealing is therefore beside the point. Petitioners do not seek to disclose or disseminate the Affidavit to anyone other than their own attorneys. Even in cases where the government produces sensitive information in discovery that cannot be possessed by defendants, the *attorneys* for those defendants are routinely permitted—indeed, often constitutionally required—to have access to such information. The government's position inverts that accepted practice; because law enforcement already gave Petitioners the Affidavit and told them to review it, the upshot here would be that the *clients* can have knowledge of its contents but their attorneys cannot. For the reasons already discussed, that raises serious issues while unfairly hamstringing Petitioners' counsel during the course of an ongoing criminal investigation.

Second, even putting all of that aside, the government's affirmative disclosure of the Affidavit to Petitioners—not to mention the instruction by FBI and DOI to review it—undermines any potential bases for continued sealing as to Petitioners and their counsel. As noted, search warrant affidavits often remain sealed until their production in discovery in order to protect the integrity of an ongoing investigation. *See, e.g.*, *In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2024 WL 1636239, at *4 (S.D.N.Y. Apr. 16, 2024) (acknowledging government interest in protecting integrity of ongoing investigation). But it strains credulity to insist that

sealing continues to be necessary when the Affidavit *has already been disclosed* to the subjects of the search—at least as to those individuals and their attorneys.

Perhaps, despite the overt nature of its investigation, the government does retain some interest in preventing wider disclosure of the Affidavit, but Petitioners have not attempted—and are not seeking—to disclose the Affidavit to anyone other than their counsel. And as to Petitioners, there can be no reasonable argument that review by counsel would "compromise[e] the [government's] interest in the integrity and security of the investigation," at least beyond what has already occurred by the government's own actions.[7] *In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08–M–208 (DRH), 2008 WL 5667021, at *5 (N.D.N.Y. July 14, 2008).

## IV. The Petitioners Are Entitled to Relief

"In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Such relief requires "that the action present an 'actual controversy' between the parties," *American Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007), and "the indispensable prerequisites for declaratory relief are the existence of a live, definite and concrete controversy between adverse parties and circumstances making a binding judicial declaration useful in establishing their rights,"

[7] The government may say that providing the Affidavit to Petitioners was inadvertent and so it should be able to rewind matters as if that disclosure never happened. But there are at least three problems with that argument. First, actions by members of the prosecution team are attributed to prosecutors whether they know about them or not. *See, e.g.*, *United States v. Sanchez*, 813 F. Supp. 241, 248 (S.D.N.Y. 1993), *aff'd*, 35 F.3d 673 (2d Cir. 1994) (finding agents' "perjury [wa]s the knowing use of perjury by the prosecution, even though the Assistant United States Attorney was unaware of the perjury"). Second, it is equally possible that providing the Affidavit was *not* a mistake, but rather an attempt to secure cooperation or prompt Petitioners to make statements. And third, regardless of whether providing the Affidavit was accidental, the result has been to hinder the ability of Petitioners' counsel to effectively advise their clients, which must surmount any wish by the government to undo a purported error.

*Archie Comic Publications, Inc. v. DeCarlo*, No. 00 CIV 5686 (LAK), 2001 WL 1543526, at *1 (S.D.N.Y. Dec. 3, 2001) (citing *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001)).

Those prerequisites are met here. Petitioners seek a declaration that their counsel may review the Affidavit, subject to any terms the Court deems necessary to safeguard the integrity of the wider criminal investigation. They further assert that no legal basis prevents them from doing so, while the government insists that Petitioners' counsel is somehow prohibited from reviewing or retaining copies of the Affidavit. Clarifying counsel's right to review the Affidavit already in their possession via judicial declaration will resolve the dispute and permit the parties to act in accordance with their respective rights. It will also prevent Petitioners or their counsel from being subject to potential actions by the government intended to prevent review or retention of the Affidavit, such as service of a subpoena for the Affidavit, the execution of a search warrant, or attempts by the government to disqualify counsel.

Likewise, the Court may exercise its supervisory power over criminal matters to rule that Petitioners' counsel may permissibly retain and review the copies of the Affidavit already in their possession. The government and Petitioners' counsel are "parties before the bar" subject to the Court's supervisory power. *HSBC Bank USA, N.A.*, 863 F.3d at 135 (quoting *Payner*, 447 U.S. at 735 n.7). And an order clarifying that counsel may review the Affidavit already in their possession would both protect Petitioners' rights and "establish[] and maintain[] civilized standards of procedure and evidence." *McNabb*, 318 U.S. at 340.

## CONCLUSION

"No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law

procedures." *Douglas v. People of State of California*, 372 U.S. 353, 358 n.2 (1963) (quoting *Coppedge v. United States*, 369 U.S. 438, 449 (1962)). "The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged." *Id.* Here, the government seeks to gain a purely tactical advantage over Petitioners by depriving their counsel of information that Petitioners themselves have already seen but, without legal training or experience as criminal defense attorneys, may not fully understand or appreciate. The government has identified no legal basis for prohibiting counsel from reviewing the Affidavit, nor are there cognizable risks to the integrity of the government's investigation in light of the reasonable protections that counsel have proposed. At bottom, what the government seeks is to keep counsel in the dark for as long as possible to preserve its strategic advantage; that should not be the measure of our criminal justice procedures.

For the foregoing reasons, Petitioners respectfully request that the Court grant their motion and enter an order:

(i) Declaring that Petitioners and their counsel may review copies of the Affidavit already in their possession, subject to such terms or conditions that the Court deems necessary to safeguard the integrity of the ongoing criminal investigation;

(ii) Declaring that the government may not prohibit Petitioners or their counsel from reviewing copies of the Affidavit already in their possession, and enjoining the government from demanding or requiring the same;

(iii) Declaring that the government may not direct the return or destruction of copies of the Affidavit in the possession of Petitioners' counsel, and enjoining the government from demanding or requiring the same; and

(iv) Awarding such other relief as the Court deems just and proper.

Dated: August 19, 2026
New York, New York

Respectfully submitted,

/s/ *Sarah Krissoff*

Jerry H. Goldfeder
Sarah Krissoff

COZEN O'CONNOR

3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
(212) 908-1397 / -1388
jgoldfeder@cozen.com
skrissoff@cozen.com

*Counsel for Anthony M. Miranda*

/s/ *Jarrod L. Schaeffer*

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP

256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

*Counsel for Sylvia Miranda*